UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM EMDE and<br>JUDITH EMDE<br>    Plaintiff<br><br>v.<br><br>DAVID SMITH, M.D.,<br>AMY ANDERSON, M.D. and<br>R. WESLEY FARRIS, M.D.<br>    Defendants | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-11987MLW<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S EXPERT WITNESS DISCLOSURE**

David Brewster, M.D.
1 Hawthorne Place, Suite 111
Boston, MA 02114

William McGee, M.D.
Baystate Medical Center
759 Chestnut Street
Springfield, MA 01199

Stephen Saris, M.D.
Neurosurgical Associates, Inc.
3 Davol Square, Suite B-200
Providence, RI 02903

James A. Sarnelle, M.D.
90 Morgan Street, Suite 304
Stamford, CT 06905

Drs. Brewster, McGee, Saris, and Sarnelle are expected to testify based on their education, training and experience, as well as review of the pertinent medical records, review of the materials generated during discovery in this matter, and evidence offered at trial.

William Emde was admitted to Winchester Hospital in Winchester Massachusetts on November 18, 2003 with a failing bypass of his left lower extremity. He was admitted for question of thrombosis of the graft, emergency angiography and possible thrombolysis. He had a history of diabetes, hypertension and hyperlipidemia. He was on Coumadin.

On November 19, 2003, Mr. Emde had a graft revision under epidural anesthesia. The following day the epidural was removed after heparin, an anticoagulant, was temporarily stopped. The heparin was started again after two hours. An affidavit of Judith Emde signed on September 8, 2004 states that David Smith M.D. and Amy Anderson, M.D. saw Mr. Emde on November 22, 2003 at noon. Dr. Anderson reported that Mr. Emde had back pain and questioned whether he had a retroperitoneal bleed. Dr. Smith continued to follow Mr. Emde's progress throughout the day.

Nurses notes indicate that Mr. Emde had severe low back pain radiating to the left groin and low abdomen at 4:00 p.m. By about 8:00 p.m., Mr. Emde had a distended bladder which required a catheter to be inserted — he had no problems voiding earlier during the day. By 11:00 p.m. Mr. Emde was complaining of neck and shoulder pain and was unable to grasp or lift his right arm. At 11:30 p.m., Mr. Emde was seen by Allen Jeremias, M.D., an intensivist, at the request of Dr. Smith. Dr. Jeremias recorded that Mr. Emde complained now of right arm, right shoulder, and neck pain and that he had lost both sensation and motor function in both lower extremities as well as motor function of his right arm. His examination confirmed Mr. Emde's complaints. Dr. Jeremias suggested a neuro consultation in the morning and discussed his findings with Dr. Smith.

At 1:00 a.m., Dr. Smith recorded Mr. Emde's progress throughout the day and performed a physical examination. His findings were similar to Dr. Jeremias'. Dr. Smith discussed Mr. Emde's condition with R. Wesley Farris, M.D., an on-call neurologist, and recorded Dr. Farris' opinion and recommendation. Dr. Farris considered psychosomatic exaggeration, Guillain-Barré syndrome, and spinal cord compression, and, indicating that the first diagnosis was the most likely, told Dr. Smith he would see Mr. Emde in the morning.

Dr. Smith discontinued Heparin at that time. He then discussed Mr. Emde's condition with Dr. Anderson, who agreed with the recommendations of Dr. Farris and Dr. Jeremias for Mr. Emde's care.

The following morning at 9:00 a.m., Mr. Emde was found to be paraplegic. An emergency CT scan of the spine showed an epidural hematoma. Mr. Emde was emergently transferred to Boston Medical Center where Shapur Ameri, M.D. surgically evacuated the hematoma. Mr. Emde's diagnosis on transfer to Northeast Rehabilitation Hospital was 17 complete paraplegia.
It is my opinion, to a reasonable medical certainty, that all the aforementioned physicians breached the standard of care.

The plaintiff's experts will testify that Richard Smith, M.D. breached the standard of care of the average surgeon by failing to consider an epidural bleed with spinal cord compression during the afternoon and early evening of November 22, 2003. Given Mr. Emde's progressive neurologic symptoms, complaints of back pain radiating to the abdomen, history of an epidural catheter and being on heparin, the most likely diagnosis was an epidural bleed. Dr. Smith should have ordered a spinal CT or MRI which would have made the diagnosis. He should have called for an urgent neurological consultation. Had he done so, emergency surgery would have been performed to relieve the pressure on the spinal cord. Because of this breach of the standard of care, Mr. Emde has paraplegia which he otherwise would not have.

Regardless that the intensivist recommended a neurological consult in the morning, Dr. Smith was himself required to consider epidural bleeding and rule out that diagnosis first, as it was the most dangerous and potentially life-threatening to Mr. Emde if missed.

The plaintiff's experts will further testify that R. Wesley Farris, M.D. breached the standard of care of the average neurologist by failing to recommend immediate radiologic studies to rule out epidural bleeding or to recommend immediate neurological consultation. Assuming that Dr. Smith reported to Dr. Farris an accurate account of Mr. Emde's problem, the standard of care for Dr. Farris was to first rule out epidural bleeding before concluding that Mr. Emde's most likely diagnosis was psychosomatic exaggeration. Had Dr. Farris done so, the diagnosis would have been made timely. Because of this breach of the standard of care, Mr. Emde has paraplegia which he otherwise would not have.

The plaintiff's experts will further testify that Amy Anderson, M.D. breached the standard of care of the average surgeon after speaking with Dr. Smith by failing to consider epidural bleeding and recommending that Dr. Smith order an immediate radiologic study and neurological consult to rule out epidural bleeding rather than wait until the morning. Had she done so, Mr. Emde would have been diagnosed and treated properly and would not have had paraplegia.

The plaintiff's experts will further testify that Allen Jeremias, M.D. breached the standard of care of the average intensivist by failing to consider epidural bleeding as a cause for Mr. Emde's signs and symptoms and by failing to recommend immediate radiologic studies and a neurosurgical consultation. Had he done so, the correct diagnosis would have been timely made and urgent treatment would have ensued, avoiding paraplegia.

Plaintiff reserves the right to supplement this disclosure.

The Plaintiffs,
by their Attorney,


 /s/ Barry D. Lang / Zachary B. Lang 
Barry D. Lang, Esq.
BBO # 565438
Zachary B. Lang, Esq.
BBO# 652055
Barry D. Lang, M.D. & Associates
1 State Street, Suite 1050
Boston, MA 02109
(617) 720-0176

Dated: December 22, 2005