**Baystate Medical Center**
A Member of Baystate Health System

Springfield, Massachusetts 01199
(413) 794-0000

**Critical Care Division**

Thomas L. Higgins, M.D.
*Director*
*Adult Critical Care*

Jay S. Steingrub, M.D.
*Director*
*Medical Intensive Care Unit*

William T. McGee, M.D.
*Director*
*ICU Quality Improvement*

Mark Tidswell, M.D.
*Director*
*Intermediate Care Unit*

Lori E. Circeo, M.D.
*Director*
*Post Anesthesia Care Unit*

Paul Jodka, M.D.

413-794-5439
FAX: 413-794-5389

January 4, 2006

Barry D. Lang, Esq.
Barry D. Lang, M.D. & Associates
1 State Street, Suite 1050
Boston, MA 02109

Re: William Emde

Dear Attorney Lang:

I have reviewed the medical records of William Emde. William Emde was admitted to Winchester Hospital in Winchester Massachusetts on November 18, 2003 with a failing arterial bypass of his left lower extremity. He was admitted for question of thrombosis of the graft, emergency angiography and possible thrombolysis. His past medical history included diabetes, hypertension, and hyperlipidemia. His medications included Coumadin, Glucophase, Glucotrol, and Timoptic and Xalantan eye drops. The Coumadin dose was 2.5mg/day and was taken on November 18th. His hemoglobin at that time was 11.7 and the INR was 1.3.

On the pre-operative orders written after 6:50pm on the 18th, there is an order for heparin, 600 units/hour. This was increased to 700 units/hour at 4:15am. His pre-operative INR was 1.3 on November 18 at 4:06pm. He went to the operating room on November 19th. Heparin was stopped pre-operatively. At approximately 2:45pm, Mr. Emde had a graft revision under epidural anesthesia. The epidural was placed uneventfully at approximately 1:46pm. On the post-operative note, written on November 20th, there was noted to be a 50cc blood loss. On November 20th at 9:30am it is ordered to stop heparin four hours before and resume two hours after the epidural is discontinued. The Coumadin is to begin tonight. At 10:45pm, anesthesia wrote "the heparin to be restarted in two hours after the epidural was removed". The epidural catheter was removed at that time.

An affidavit of Judith Emde signed on September 8, 2004 states that David Smith M.D. and Amy Anderson, M.D. saw Mr. Emde on November 22, 2003 at noon. Dr. Anderson reported that Mr. Emde had back pain and questioned whether he had a retroperitoneal bleed. Dr. Smith continued to follow Mr. Emde's progress throughout the day. Nurses' notes indicate that Mr. Emde had severe low back pain radiating to the left groin and low abdomen at 4:00 p.m. By about 8:00 p.m., Mr. Emde had a distended bladder which required a Foley catheter to be inserted. A CT of the abdomen that evening showed that there was a distended bladder. He had no problems voiding earlier during the day. The Foley was inserted at approximately 11:30pm and 700cc's of urine were drained. By 11:00 p.m. Mr. Emde was complaining of neck and shoulder pain and was unable to grasp with or lift his right arm. At 11:30 p.m., Mr. Emde was seen by Allen Jeremias, M.D., an intensivist, at the request of Dr. Smith. Dr. Jeremias recorded that Mr. Emde now complained of right arm, right shoulder, and neck pain and that he had lost both sensation and motor function in both lower extremities as well as motor function of his right arm, and his assessment concluded "now developed diffuse pain and new onset weakness". His examination was consistent with Mr. Emde's complaints. Dr. Jeremias suggested a neuro consultation in the morning along with a head CT to rule out CVA or bleed.

Page 2.

At 1:00 a.m., Dr. Smith recorded Mr. Emde's progress in the chart throughout the day and performed a physical examination which showed Mr. Emde to be awake, alert, comfortable and lucid with intact cranial nerve function. His right arm had four out of five strength compared to the left which had five out of five strength and normal sensation. The left lower extremity showed decreased sensation to touch. He wrote:

*"Initially patient complained of left groin and lower back and sacral tenderness similar to disc herniation patient had previously. Later in the a.m., there was weakness in the legs and numbness in the posterior upper thigh and buttock. Later in the evening, the patient developed right shoulder and neck pain and reported that he could not lift his right arm. He has diminished sensation in bilateral lower extremities and can't move legs."*

Dr. Smith then spoke with both the intensivist and the on call neurologist and wrote of his conversation with the neurologist: *"Given the extent of lower extremity symptoms with waxing and waning upper extremity symptoms, will see patient in the a.m. For now will hold all anticoagulation, although without evidence of bleeding in abdomen or head. Corticosteroids not clearly indicated and will certainly worsen glucose control. Will hold off. CT discussed, not felt to be helpful. Question MRI in a.m."* His findings were similar to Dr. Jeremias'. Dr. Smith discussed Mr. Emde's condition with R. Wesley Farris, M.D., an on-call neurologist, and recorded Dr. Farris' opinion and recommendation. Dr. Farris considered psychosomatic exaggeration, Guillain-Barré syndrome, and spinal cord compression in his differential. It was not mentioned at any point in these discussions that the patient recently has an epidural catheter.

Dr. Smith discontinued Heparin at that time. He discussed Mr. Emde's condition with Dr. Anderson, who agreed with the recommendations of Dr. Farris and Dr. Jeremias and the plan by Dr. Smith for Mr. Emde's care.

The following morning at 9:00 a.m., Mr. Emde remained paraplegic. An emergency CT scan of the spine showed an epidural hematoma. Mr. Emde was emergently transferred to Boston Medical Center where Shapur Ameri, M.D. surgically evacuated the hematoma. Mr. Emde's diagnosis on transfer to Northeast Rehabilitation Hospital was complete paraplegia. He did not regain function post-operatively.

It is my opinion that Allen Jeremias, M.D. breached the standard of care of the average intensivist by failing to consider acute spinal cord compression from epidural bleeding as a cause for Mr. Emde's signs and symptoms and by failing to appreciate the critical nature of his condition and the need for immediate diagnosis and treatment including radiologic studies and a neurosurgical consultation. Had he done so, the correct diagnosis would have been made and urgent treatment would have ensued avoiding paraplegia.

Sincerely,

William T. McGee, M.D., M.H.A.
Director, ICU Quality Improvement

Assistant Professor of Medicine and Surgery
Tufts University School of Medicine

WTM/slg
LangLtrFinal

# Neurosurgery Associates

**Stephen Saris, M.D.**
Email: StephenSaris@comcast.net
Web site: neurosurgery-associates.com

Administrative & Mailing Address:

3 Davol Square
Suite B 200, Box 177
Providence, RI 02903
Telephone: (401) 453-3545
Facsimile: (401) 453-3533

Offices & Hospital Affiliations:

Our Lady of Fatima Hospital
Chief, Division of Neurosurgery
200 High Service Avenue
North Providence, RI 02904

Rhode Island Hospital
New England Gamma Knife Center
593 Eddy Street
Providence, RI 02903

Landmark Medical Center
219 Cass Avenue
Woonsocket, RI

Sturdy Hospital
211 Park Street
Attleboro, MA

Barry D. Lang, Esq.
Barry D. Lang, M.D. & Associates
1 State Street, Suite 1050
Boston, MA 02109

**Re: William Emde**

Dear Attorney Lang:

I have reviewed the medical records of **William Emde**. This 62-year-old gentleman had surgery on November 19, 2003 for a graft revision in his left leg. He tolerated the procedure well. On postoperative day number one (November 20, 2003) his pain control was good and he had minimal oozing at the operative site. He had a palpable pulse at the ankle. The epidural catheter was removed and was noted to be intact with a clean site. Heparin had been held prior to removal, and was restarted several hours after removal of the catheter. Coumadin was started on postoperative day number one. On postoperative day number three (November 22, 2003), the patient was walking and urinating spontaneously. During that day, he complained of low back pain. He described fullness of the bladder, and a Foley catheter was placed. About 600 cc of urine were removed. During the evening of November 22, 2003, he described change in sensation and feeling of his legs, and also of his right arm. He had diminished sensation in both legs and loss of motor function of the left leg. He had decreased motor function of the right arm and slight change in, what I believe, was the left arm. At 11:30 p.m., the intensivist describes 0/5 strength in both legs, i.e. paraplegia. A neurologist -Wes Farris, M.D.-discussed the condition on the phone with the attending physician. Possible causes were thought to be psychosomatic, Guillain-Barre, and cord compression syndromes. Steroids were discussed, but not prescribed. The neurologist related that he would see the patient the next morning. The heparin was stopped. On the morning of November 23, 2004, there was no sensation or strength in the lower limbs. His arms were moving equally. The patient had a CT scan of the spine that showed a thoracic epidural hematoma. Neurosurgical consultation was obtained. The patient was transferred to Boston Medical Center, where he was flaccid and paraplegic with a sensory deficit at T5. He underwent emergency evacuation of the epidural hematoma on November 23, 2003. On November 28, 2003, he was admitted to Northeast Rehabilitation Hospital in Salem, Massachusetts. On examination, be had a T7 complete paraplegia with patchy sensation in the legs. On December 29, 2003, Dr. Ameri saw Mr. Emde, and he was paraplegic. He had no sensation in the lower limbs.

**ASSESSMENT:** The below statements are made to a reasonable degree of medical certainty.

William Emde
Page 2 of 2

During the evening of November 22, 2003, Mr. Emde developed spinal cord compression secondary to an epidural hematoma. This was caused by removal of an epidural catheter earlier in the hospitalization. The neurologist -Wes Farris, M.D.-was informed of Mr. Emde's deterioration at approximately 1:00 a.m. on November 23, 2003. The standard of practice for any specialist trained in the diagnosis and treatment of diseases of the nervous system would be to immediately come to the hospital to evaluate the patient, order emergent MR imaging of the spine (if available) at Winchester Hospital, or insist on emergency transfer to another hospital where immediate MR-imaging was available. Had he done so, the correct diagnosis would have been made earlier.

As a result of his breach of the standard of care, there was a delay of approximately 9 hours at which time imaging showed an epidural hematoma which required immediate surgery. In general, early removal of an extradural compressive mass results in improved patient outcome. The approximately nine-hour delay in diagnosis reduced Mr. Emde's opportunity to have recovered normal neurological function in his legs after decompressive surgery.

*Signed under that pains and penalties of perjury this 15th day of January 2006.*

Sincerely Yours,

Stephen Saris, M.D.

MASSACHUSETTS GENERAL HOSPITAL                    HARVARD MEDICAL SCHOOL

DAVID C. BREWSTER, M.D.
*Clinical Professor of Surgery*

*Vascular Surgery*

  

*Office:*
*One Hawthorne Place*
*Boston, MA 02114*
*617-523-4293*
*Fax 617-726-8230*
*email: dcbrewster@partners.org*

January 17, 2006

Barry Lang, M.D., J.D.
Attorney at Law
Barry D. Lang, M.D. & Associates
1 State Street, Suite 1050
Boston, MA  02109

　　　　Re:  William Emde

Dear Dr. Lang:

As you requested, I have reviewed all records forwarded to me by your office in regard to the above-captioned matter. These include the following materials:

1. Winchester Hospital Records
   Admission – 11/18/03 – 11/23/03;

2. Deposition transcript:
   William Frederick Emde;

3. Deposition transcript:
   Judith Anne Emde;

4. Deposition transcript:
   David Smith, M.D.;

5. Deposition transcript:
   Amy Anderson, M.D.;

6. Deposition transcript:
   Roger Wesley Farris, II, M.D.;

7. Expert report:
   Stephen Saris, M.D.;

8: Disclosure letter of anticipated testimony.

Following a detailed review of all of these records, my findings and opinions were discussed with you in our telephone conference of January 4, 2006.

As we agreed, I will retain all records and await further materials from you. I have done my best to put together a list of case names and laws firms in which I have provided deposition or court testimony over the past four years.

So that we may stay up-to-date in the matter, I am enclosing a statement reflecting time spent on review of these initial materials thus far. Certainly let me know if you have any questions.

Sincerely yours,

David C. Brewster, M.D.

Enc. Statement